**BARON & BUDD, P.C.**
John P. Fiske (SBN 249256)
Jason Julius (SBN 249036)
Victoria Sherlin (SBN 312337)
Taylor O'Neal (SBN 336077)
11440 West Bernardo Court Suite 265,
San Diego, CA 92127
Telephone:  858-251-7424 Fax: 214-520-1181
Email: jfiske@baronbudd.com
         jjulius@baronbudd.com
         tsherlin@baronbudd.com
         toneal@baronbudd.com

**DIXON DIAB & CHAMBERS LLP**
Ed Diab (SBN 262319)
Deborah Dixon (SBN 248965)
Robert J. Chambers, II (SBN 244688)
600 W. Broadway, Suite 1540
San Diego, CA 92101
Tel: (619) 354-2662
Email: diab@theddcfirm.com
         ddixon@theddcfirm.com
         rob@theddcfirm.com
*Attorneys for Plaintiff Siskiyou County*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SISKIYOU COUNTY, a political subdivision of the State of California, duly organized and existing by virtue of the laws of the State of California,<br><br>        Plaintiff,<br><br>   v.<br><br>PACIFICORP,<br><br>        Defendant. | Case No.: _____<br><br>**COMPLAINT FOR DAMAGES AND JURY TRIAL**<br><br>**1.  INVERSE CONDEMNATION**<br>**2.  NEGLIGENCE**<br>**3.  TRESPASS**<br>**4.  NUISANCE**<br>**5.  PREMISES LIABILITY**<br>**6.  VIOLATION OF PUBLIC UTILITIES CODE §2106**<br>**7.  VIOLATION OF HEALTH & SAFETY CODE §13007** |

Plaintiff SISKIYOU COUNTY ("Plaintiff"), on information and belief, hereby brings the following Complaint for damages against PacifiCorp dba Pacific Power (hereinafter referred to as "PACIFICORP" or "Defendant"), as a result of the damages that Plaintiff sustained in the McKinney Fire that began on July 29, 2022. Plaintiff alleges as follows:

## INTRODUCTION

1.     On or about July 29, 2022, firefighters responded to a wildfire originating off Highway 96 and McKinney Creek Road, southwest of the Klamath River in Siskiyou County. The deadly wildfire, now called the "McKinney Fire," grew at an overwhelming rate. The McKinney Fire burned more than 60,138 acres, damaged or destroyed over 194 structures, resulted in numerous injuries and at least four fatalities, and catastrophically impacted the local community.



**Flames of McKinney Fire – Photo via KDRV News**

2.     Upon information and belief, Plaintiff alleges that the McKinney Fire began when electrical infrastructure owned and operated by PACIFICORP contacted, or caused sparks to contact, surrounding vegetation. This occurred because: (1) PACIFICORP's utility infrastructure was intended, designed, and constructed to pass electricity through exposed powerlines in vegetated areas; (2) PACIFICORP negligently, recklessly, and willfully failed to properly, safely, and prudently inspect, repair, maintain, and operate the electrical equipment in its utility infrastructure; and/or (3) PACIFICORP negligently, recklessly, and willfully failed to maintain an appropriate clearance area between the

electrical equipment in its utility infrastructure and surrounding vegetation.

3.     Defendant knew or should have known about the significant risk of wildfires in the area posed by the ongoing and immediate climate, weather, and drought conditions in and around their Northern California service territory, including but not limited to Siskiyou County, and the substantially elevated risk of fire ignition resulting from these known and foreseeable conditions.

4.     Plaintiff sues Defendant for just compensation, damages, and all other available remedies arising from the takings and harms caused by the McKinney Fire.



**Example of Destruction Caused by McKinney Fire – Photo via CNN News**

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1332(a) because the Plaintiff, Siskiyou County, is a "citizen" of this State, PACIFICORP is a citizen of a different state and the amount on controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over PACIFICORP because at all relevant times, PACIFICORP purposely availed itself of the privilege of doing business in the State and in this District, including by engaging in the business of providing electric utility services in this State. PACIFICORP purposefully directed its activities at the State, and the claims arise out of those activities.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff' claims occurred in, were directed to, and/or emanated from this District.

## PARTIES

### A.     Plaintiff

8.     Plaintiff SISKIYOU COUNTY is a political subdivision of the State of California, duly organized and existing by virtue of laws of the State of California. Plaintiff suffered and/or continues to suffer property losses and other damages from the McKinney Fire.

### B.     Defendant

9.     Defendant PACIFICORP was and is an Oregon corporation conducting business as a public utility in Northern California. PACIFICORP engages in the business of generating, transmitting, and distributing electric energy in Siskiyou County, California. At all times relevant to this Complaint, PACIFICORP acted to provide a utility, including electrical services, to members of the public in California, including in Siskiyou County.

10.     PACFICORP has a California office located at 300 South Main Street, Yreka, California 96097.

11.     PACIFICORP is both an "Electrical Corporation" and a "Public Utility" pursuant to, respectively, §§ 218(a) and 216(a) of the California Public Utilities Code. It is in the business of providing electricity to Northern California residents, businesses, and properties therein, including Plaintiff, through its electrical distribution system network, including electrical transmission and distribution power lines.

12.     Plaintiff is informed and believes that Defendant owns and/or operates power lines and other electrical distribution system equipment in California to transmit, supply, and provide electricity to California consumers.

## GENERAL FACTUAL ALLEGATIONS

### A.  PACIFICORP Supplies Energy to Californians

13.     PACIFICORP supplies electricity and energy to several Counties in Northern California, including Plaintiff Siskiyou County. PACIFICORP owns, installs, designs, constructs, operates, inspects,

uses, and maintains overhead power lines and or electrical equipment for the purpose of transmitting and distributing electricity and energy to their retail consumers pursuant to any and all applicable state, county, city, statutory, administrative and common law, and all other applicable laws, regulations, orders, and standards. Defendant's electrical lines, systems, and equipment were located at and around the origin of the McKinney Fire.

14.    The electrical distribution system, including but not limited to electrical facilities, powerlines, conductors, power poles, conductors, reclosers, and/or all other electrical equipment, are inherently dangerous and hazardous instrumentalities, and Defendant knows this. The transmission and distribution of electricity requires Defendant, including PACIFICORP, to exercise an increased level of care commensurate with and proportionate to the increased risk of danger associated with their electrical distribution system.

15.    The conditions and circumstances existing at the time of the ignition at the McKinney Fire's origin were reasonably foreseeable by a reasonable and prudent person and were in fact reasonably foreseeable and expected by Defendant.

16.    At all relevant times, Defendant undertook and continues to have a non-transferable, non-delegable duty to properly construct, inspect, repair, maintain, manage, and/or operate its power lines and/or other electrical equipment, and to conduct proper vegetation management and inspections, and keep vegetation properly trimmed at a safe distance so as to prevent foreseeable contact with its system and equipment.

17.    Plaintiff is informed and believes that Defendant is responsible for maintaining vegetation near, around, and in proximity to their system and equipment in compliance with federal and state regulations and permits, including but not limited to California Public Resources Code §§ 4292 and 4293, and CPUC General Orders 95 and 165. Defendant was aware of the risks posed by their electrical distribution system, including the importance of proper vegetation management practices. Defendant abdicated its duties and as a result exposed the public to unacceptable risk.

18.    In the construction, inspection, repair, maintenance, management, ownership, and/or operation of its electrical distribution system, Defendant had an obligation to comply with a number of statutes, regulations, permits, and standards, including, but not limited to: Public Utilities Code § 451;

Public Resource Code ("PRC") §§ 4292, 4293, and 4435; and CPUC General Orders 95 and 165.

19.     PACIFICORP is the electrical provider in the area where the McKinney Fire ignited, and PACIFICORP owns and operates an electrical distribution system that runs near the area of origin of the McKinney Fire.

20.     At all times relevant, Defendant was aware that the State of California had been in a multi-year period of drought. Defendant was also aware that portions of Siskiyou County frequently experience high wind conditions, which are highly conducive to the rapid spread of wildfires and extreme fire behavior. Such winds are not abnormal or unforeseeable.

21.     On January 17, 2014, the Governor issued an Executive Order proclaiming a State of Emergency throughout the State of California due to severe drought conditions which had existed for four years. On November 13, 2015, the Governor issued Executive Order B-36-15, which proclaimed "[t]hat conditions of extreme peril to the safety of persons and property continue to exist in California due to water shortage, drought conditions, and wildfires ...." See Executive Order B-36-15, Office of Gov. Edmund Brown, Jr. (November 13, 2015).

22.     According to records maintained by Cal Fire, electrical equipment was tied as the third leading cause of wildfires in California during 2014, the latest year such statistics have been published. PACIFICORP knew of the foreseeable danger of wildfire when its power lines came into contact with vegetation.

23.     Defendant released its 2022 California Wildfire Mitigation Plan on July 18, 2022.[1] Throughout its plan, Defendant recognized that good vegetation policies and active de-energization policies were key to preventing their equipment starting wildfires.

24.     As for vegetation policies, Defendant's 2022 plan recognized that it was important to trim trees to make sure they did not crash into their powerlines during high winds. Likewise, Defendant recognized that it was important to make sure the trees near the powerlines were sufficiently sturdy that high winds would not lead trees - including "dead wood or poorly structured limbs"- to fly into the

---

[1] The plan is available here:
https://www.pacificorp.com/content/dam/pcorp/documents/en/pacificpower/rates-regulation/california/filings/2022-wmp/WMP_Update2022.pdf, last accessed October 25, 2022

powerlines. PACIFICORP knew not taking these proactive steps could cause a wildfire.

25.     At a June 18, 2019, meeting before the Oregon Public Utilities Commission, Defendant explained to the commission that weather monitoring, vegetation management, and public power shutoffs were key parts of a wildfire management plan.

26.     The natural and ordinary consequences of Defendant's choices and actions or inactions led to the start of the McKinney Fire on the afternoon of July 29, 2022, in Siskiyou County, California.

**B.  Defendant's Equipment Ignites the McKinney Fire**

27.     The McKinney Fire ignited on July 29, 2022, near Highway 96 and McKinney Creek Road, located southwest of Klamath River in Siskiyou County, California.

28.     PACIFICORP is the electrical provider in the area where the McKinney Fire ignited, and PACIFICORP owns and operates a transmission line that runs near Highway 96 and McKinney Creek Road, in Siskiyou County, California, in the very same location as the ignition point of the McKinney Fire.

29.     In fact, on August 4, 2022, PACIFICORP itself reported to the California Public Utilities Commission that its equipment was located within the area of ignition. Specifically, PACIFICORP reported that its 5G40 distribution circuit from its Scott Bar Substation is located within the area of ignition.

30.     Plaintiff is informed and believes that the McKinney Fire occurred because: (1) PACIFICORP's utility infrastructure was intended, designed, and constructed to pass electricity through exposed powerlines in dry, vegetated areas; (2) PACIFICORP negligently, recklessly, and willfully failed to prudently and safely inspect, maintain, and operate the electrical equipment in its utility infrastructure (including failing to de-energize its powerlines in times of high fire risk); and/or (3) PACIFICORP negligently, recklessly, and willfully failed to maintain the appropriate clearance area between the electrical equipment in its utility infrastructure and surrounding vegetation.

31.     The conditions and circumstances surrounding the ignition of the McKinney Fire, including the nature and condition of PACIFICORP's electrical infrastructure, location of adjacent vegetation, and tinder-like dry vegetation were foreseeable by any reasonably prudent person and, therefore, were certainly foreseeable to Defendant—those with special knowledge and expertise as

electrical services providers and their employees and agents. In fact, prior to the McKinney Fire, PACIFICORP had identified the area as an extreme risk area, where topography, historical fires and local fuel conditions put it at higher danger.

32.      This wildfire was not the result of an "act of God" or other *force majeure*. This wildfire was started by sparks from high-voltage transmission lines, distribution lines, appurtenances, and other electrical equipment within PACIFICORP's utility infrastructure that ignited surrounding vegetation. Despite knowing of an extreme fire risk, Defendant deliberately prioritized profits over safety. This recklessness and conscious disregard for human safety was a substantial factor in bringing about the McKinney Fire.

33.      This was not the first fire of this type caused by PACIFICORP. Plaintiff is informed and believes that PACIFICORP's wrongful conduct started both the deadly Slater Fire (which also started in Siskiyou County and burned significant portions of Northern California and Southern Oregon, killing at least one person and destroying hundreds of homes) and the Archie Creek Fire (which burned over 130,000 acres and destroyed over 100 homes in Douglas County, Oregon). Unfortunately, rather than reform its practices following the death and devastation wreaked on California and Oregon in 2020, PACIFICORP once again elected to put profits over public safety and failed to properly maintain and inspect its dangerous, high-voltage over-head powerlines.

34.      Plaintiff suffered injuries and damages including, but not limited to, the following: loss of natural resources, open space, and public lands; loss of public parks; property damages including real and personal property; staff labor costs, including overtime labor costs; fire suppression costs including, materials, and other fire suppression damages; emergency response and rescue costs; evacuation expenses; economic damages such as loss of tax revenue including property, sales, and transient occupancy taxes; economic damages such as losses from impacts on business-like activities; costs associated with response and recovery including debris removal, , and other costs; damage to infrastructure including but not limited to roads, sidewalks, water, stormwater and sewer systems, and underground infrastructure, and other public entity-owned infrastructure; damages based on soil erosion and loss of soil stability and productivity; damages related to water contamination including water quality preservation and correction expenses; loss of water storage; loss of aesthetic value; and other significant

damages and losses directly related to and caused by the McKinney Fire.

35.     A further enumerated list of impacts to Plaintiff includes, but is not limited to, the following:

      a.    Fire suppression costs;

      b.    Administration, funding, and operation of emergency operations centers;

      c.    Administration, funding, and operation of evacuation centers and shelters;

      d.    Securing and managing burn areas, including safe re-entry for the public;

      e.    Staff overtime, labor costs, personnel, and other materials;

      f.    Additional law enforcement costs;

      g.    Lost work and productivity due to public entity employees unable to return to work;

      h.    Loss of natural resources, open space, wildlife, and public lands;

      i.    Loss of parks, including damage to real property and to recreational opportunities and programs, and the revenue generated therefrom;

      j.    Destruction or damage to public infrastructure, including but not limited to roads, sidewalks, water storage facilities, water distribution systems, sewer collection systems, stormwater systems, fire stations, and other infrastructure;

      k.    Damage or harm to facility and infrastructure lifespan, including water treatment facilities and landfills;

      l.    Costs of debris removal and related administrative obligations;

      m.    Costs of facilitating/administering community rebuilding efforts, staffing and administration of permitting centers;

      n.    Costs of administering community outreach efforts, including towards revisions to new ordinances, guidelines, and rules, and housing assistance programs and policies;

      o.    Costs of watershed, waterway, and water body management and protection;

      p.    Damages related to soil erosion and mitigation, loss of soil stability and productivity, including management of risk of debris flow and landslides;

q.    Damages related to water contamination, including water quality preservation and correction expenses, including but not limited to repair and/or replacement of water treatment facilities or systems;

r.    Economic damages including but not limited to loss of tax revenues such as property, sales, business, and transient occupancy taxes;

s.    Economic damages including but not limited to business like or proprietary revenues, such as airport use, facility rentals, educational and recreational programs, and others;

t.    Economic damages from loss of workforce housing;

u.    Economic damages from damage to tourism and economic development, such as overall branding and reputation;

v.    Damages resulting from short- and long-term public health impacts, including costs to provide educational, outreach, and other services;

w.    Other impacts, injuries, and damages not yet identified, including those unique to public entities.

## CAUSES OF ACTION

### A. Count I - Inverse Condemnation

36.    Plaintiff incorporates and realleges each of the paragraphs above as though fully set forth herein.

37.    Plaintiff brings this cause of action for Inverse Condemnation against Defendant.

38.    Defendant's operation and maintenance of electrical transmission and distribution lines and supporting equipment ("Electrical Systems"), which were a substantial cause of Plaintiff's damages, are a public improvement for a public use, and constitute an "electrical plant" pursuant to California Public Utilities Code § 217.

39.    Article 1, § 19 of the California Constitution states:

Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner.  The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings

upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation.

40.     Defendant's design, development, construction, installation, control, management, and maintenance, inspection, ownership, and operation of its Electrical Systems constitutes a public improvement for public use.

41.     On or about July 29, 2022, Defendant's Electrical Systems started the McKinney Fire, which directly, substantially, and legally resulted in the taking of Plaintiff's private property and deprived them of the use and enjoyment of their property.

42.     On August 15, 2019, the Supreme Court of California published its holding for the *City of Oroville v. Superior Court,* 7 Cal. 5th 1091. In that case, the Court articulated that a court assessing inverse condemnation liability must find more than just a causal connection between the public improvement and the damage to private property. In the McKinney Fire, Defendant's Electrical Systems substantially caused Plaintiff's damages and was more than just a causal connection.

43.     Defendant owned and substantially participated in the design, planning, approval, construction, and operation of the Electrical Systems and public improvements for the supplying of electricity. Defendant exercised control and dominion over the said Electrical systems and public improvements as a public project and public benefit.

44.     In *City of Oroville,* the Court requires a reviewing court to consider whether the inherent dangers of the public improvement as deliberately designed, constructed, or maintained materialized and were the cause of the property damage.

45.     Electricity is a dangerous instrumentality that poses an inherent risk that requires the exercise of increased care and precaution commensurate with and proportionate to that increased danger so as to make the transport of electricity through the Electrical Systems safe under all circumstances and exigencies posed by the surrounding weather and vegetation to ensure maximum safety under all local conditions in the service area, including the risk of fire.

46.      Defendant deliberately designed its Electrical Systems to transport electricity from its powerplant to substations through high-voltage transmission lines for the purpose of providing electricity to the public. This includes Defendant's design of Electrical Systems with system protection devices,

including but not limited to fuses, breakers, and reclosers ("System Protection") to trip and stop the flow of electricity should an electrical overcurrent event occur. The inherent danger in Electricity and Defendant's design of its Electrical Systems materialized in an electrical event that caused the McKinney Fire, which damaged Plaintiff's property. The circuitry and equipment that failed was owned and controlled by Defendant, and Defendant specifically would not allow Plaintiff or members of the public to touch, work upon, alter, or maintain any such Electrical Systems.

47.     Defendant deliberately constructed its Electrical Systems to transport electricity from its powerplant to substations through high-voltage transmission lines for the purpose of providing electricity to the public. This includes Defendant's construction of its Electrical Systems with System Protection to trip and stop the flow of electricity should an electrical overcurrent event occur. The inherent danger in Electricity and Defendant's construction of its Electrical Systems materialized in an electrical event that caused the McKinney Fire, which damaged Plaintiff's property.

48.     The Court in the *City of Oroville* articulates that "useful public improvements must eventually be maintained and not merely designed and built.  So, the inherent risk aspect of the inverse condemnation inquiry is not limited to deliberate design or construct of public improvement.  It also encompasses risks from maintenance or continued upkeep of the public work." (7 Cal. 5th 1091 at 1106). Defendant has a responsibility to maintain and continuously upkeep its Electrical Systems to ensure safe delivery of electricity to the public.

49.     Defendant designed and constructed its Electrical Systems to transport electricity from its powerplant to substations through high-voltage transmission lines for the purpose of providing electricity to the public.  Electricity is a dangerous instrumentality and Defendant has a non-delegable duty to perform inspection and maintenance on its Electrical Systems.  The inherent danger in Defendant failing to maintain, repair, and/or replace the structural integrity of its Electrical Systems, including the transmission towers, materialized in an electrical event that caused the McKinney Fire, which damaged Plaintiff's Property.

50.     Defendant has a non-delegable duty to maintain and upkeep its Electrical Systems, including the System Protection so that should an electrical overcurrent event occur, its powerlines de-energize.  The inherent danger in Defendant failing to maintain and upkeep its Electrical Systems,

including the System Protection, materialized in an electrical event, which ignited the McKinney Fire that damaged Plaintiff's Property.

51.    Defendant has a non-delegable duty to maintain and upkeep its Electrical Systems, which includes vegetation management around its Electrical Systems.  The inherent danger in Defendant failing to maintain and continuously upkeep the surrounding vegetation around its Electrical Systems materialized in an electrical event, which ignited vegetation, starting the McKinney Fire that damaged Plaintiff's Property.

52.    In acting in furtherance of the public objective of supplying electricity and as a direct, necessary and legal result of Defendant's Electrical Systems, as deliberately designed, constructed and maintained, on July 29, 2022, the Electrical Systems, including the power lines and/or other electrical equipment came in contact with vegetation and/or other live conductors, and/or broke, failed, fell down, sparked, and/or exploded, causing the McKinney Fire that tore through and burned approximately 60,138 acres and took, and did take, property owned and/or occupied by Plaintiff.

53.    Defendant has special knowledge and expertise above that of a layperson that is required to perform safe structural integrity inspections and maintenance, and other safety inspections at, near and around its Electrical Systems.  Specifically, Defendant exercised dominion and control over its Electrical Systems.

54.    The policy justifications underlying inverse condemnation liability are that individual property owners should not have to contribute disproportionately to the risks from public improvements made to benefit the community as a whole.  Under the rules and regulations set forth by the California Public Utilities Commission, amounts that Defendant must pay in inverse condemnation can be included in their rates and spread among the entire group of rate payers so long as they are otherwise acting as a reasonable and prudent manager of their Electrical Systems.

55.    The conduct as described herein was a substantial factor in causing damage to a property interest protected by the Article I, § 19, of the California Constitution and permanently deprived Plaintiff of the use and enjoyment of its property.  As a direct result of the "taking" of the property, Plaintiff sustained damages in excess of the jurisdictional minimum of this Court.  Pursuant to California Code of Civil Procedure §1036, Plaintiff is entitled to recover all litigation costs, expenses, and interest with

regard to the compensation of damage to their property, including attorney's fees, expert fees, consulting fees and litigation costs.

**B. Count II - Negligence**

56.    Plaintiff hereby realleges and incorporates by reference each and every allegation contained above as though the same were set forth herein in full.

57.    Plaintiff brings this cause of action for negligence Defendant.

58.    Defendant as the owner and/or controller of the Electrical Systems, was under a duty codified in California Civil Code §1714(a), which states, in pertinent part:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

59.    Defendant has special knowledge and expertise far beyond that of a layperson with regard to the safe design, engineering, construction, use, operation, inspection, repair, and maintenance of PACIFICORP's electrical lines, infrastructure, equipment, and vegetation management efforts. The provision of electrical services involves a peculiar and inherent danger and risk of wildfires. Specifically, Defendant was under a duty to maintain the Electrical Systems in their possession, including surrounding vegetation, in a reasonably safe condition.

60.    Prior to and on July 29, 2022, Defendant had a non-delegable duty to apply a level of care commensurate with, and proportionate to, the inherent dangers in designing, engineering, constructing, operating, and maintaining electrical transmission and distribution systems. This duty also required Defendant to maintain appropriate vegetation management programs, for the control of vegetation surrounding PACIFICORP's exposed powerlines. This duty also required Defendant to consider the changing conditions PACIFICORP's electrical transmission and distribution systems, as well as changing geographic, weather, and ecological conditions. This duty also required Defendant to take special precautions to protect adjoining properties from wildfires caused by PACIFICORP's electrical equipment.

61.    Defendant each breached these duties by, among other things:

a. Failing to design, construct, operate, and maintain PACIFICORP's high-voltage transmission and distribution lines and associated equipment, in a way that would withstand the foreseeable risk of wildfires in the area of the McKinney Fire;

b. Failing to prevent electrical transmission and distribution lines from improperly sagging or making contact with other metal and vegetation;

c. Failing to properly inspect and maintain vegetation within proximity to energized transmission and distribution lines to mitigate the risk of fire;

d. Failing to conduct reasonably prompt, proper, and frequent inspections of PACIFICORP's powerlines and associated equipment;

e. Failing to promptly de-energize exposed powerlines during fire-prone conditions and reasonably inspect powerlines before re-energizing them;

f. Failing to properly train and supervise employees and agents responsible for maintenance and inspection of powerlines; and/or

g. Failing to implement and follow regulations and reasonably prudent practices to avoid fire ignition.

62. At all relevant times, Defendant operated, controlled, and/or maintained the Electrical Systems.

63. At all times relevant, Defendant was required to own, design, control, possess, operate, install, construct, inspect, maintain, and manage the Electrical Systems, including the real estate, rights-of-way, easements, fixtures, conductors, devices, poles, conduits, apparatus, parts, and equipment in accordance with all standards, laws, rules, regulations, and orders pertaining thereto.

64. Defendant in connection with the production, sale, transmission, and distribution of electricity has a non-delegable duty, commensurate with and proportionate to the danger of transmitting power, to own, design, control, possess, construct, operate, install, inspect, maintain, and/or manage the Electrical Systems in a proper, reasonable, careful, and safe manner.

65. Defendant at all times herein had a duty to properly design, construct, operate, maintain, inspect, and manage their electrical infrastructure as well as trim trees and vegetation in compliance with

all relevant provisions of applicable orders, decisions, directions, rules or statutes, including those delineated by, but not limited to, Public Utilities Commission General Order 95, including but not limited to Rules 31.2 and 38, Public Resources Code Section 4435, and Public Utilities Commission General Order 165.

66.    The violation of a legislative enactment or administrative regulation which defines a minimum standard of conduct is negligence per se.

67.    The McKinney Fire was a direct and legal result of the negligence, carelessness, recklessness, and/or unlawfulness of Defendant. Defendant breached its respective duties owed individually and/or collectively to Plaintiff by, including but not limited to: (1) failing to comply with the applicable statutory, regulatory, and/or professional standards of care; (2) failing to timely and properly maintain, manage, inspect, and/or monitor the subject power lines, electrical equipment, and/or adjacent vegetation; (3) failing to make the overhead lines safe under all the exigencies created by surrounding circumstances and conditions; (4) failing to conduct adequate, reasonably prompt, proper, effective, and/or frequent inspections of the electrical transmission lines, wires, and/or associated equipment; (5) failing to design, construct, monitor, and/or maintain high voltage electrical transmission, and/or distribution power lines in a manner that avoids the potential to ignite a fire during long, dry seasons; (6) failing to install the equipment necessary and/or to inspect and repair the equipment installed, to prevent electrical transmission and distribution lines from improperly sagging, operating, and/or making contact with other metal on its poles or adjacent vegetation thereby igniting fires; (7) failing to keep equipment in a safe condition and/or manage equipment to prevent fire at all times; (8) failing to de-energize power lines during fire prone conditions; (9) failing to properly train and to supervise employees and agents responsible for maintenance and inspection of the transmission lines and/or vegetation areas nearby these lines and/or (10) violating Health & Safety Code § 13007 by allowing fire to be set to the property of another.

68.    As a direct and legal result of the Defendant's actions and/or omissions, Plaintiff has suffered damages including, but not limited to the following: damage to and loss of natural resources, open space, parks, and public lands; property damages including  real and personal property damages, including loss of and damage to vegetation, trees, infrastructure, and structures; increased staff labor

costs, including overtime labor costs to respond to and manage the McKinney fire and ensure the safety of the citizens of Siskiyou County; fire suppression costs, including personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses; costs associated with debris removal; damage to infrastructure, including but not limited to roads, sidewalks, water, stormwater and sewer systems, underground infrastructure and other public-entity owned infrastructure; damages based on fire-related soil erosion, loss of soil stability and productivity; damages related to water contamination including water quality preservation and correction expenses; loss of water storage; loss of aesthetic value; economic damages such as loss of tax revenue, including property, sales, and transient occupancy damages; losses from impacts on business-like activities; and other significant injuries, damages and losses directly related to and caused by the McKinney Fire.

69.    As a further direct and legal result of the Defendant's actions and/or omissions, Plaintiff has incurred and will continue to incur expenses and other economic damages related to the damage to property, including costs relating to storage, clean-up, disposal, repair, depreciation, and/or replacement of their property, and/or other related consequential damages.

70.    The McKinney Fire was the result of Defendant's practice of prioritizing profits over safety and failure to properly maintain and inspect their power lines and adjacent vegetation, knowing that the likely result was a fire that would pose a risk of serious injury and/or death, and damage to property, including damage to Plaintiff's property.

71.    Defendant has a virtual monopoly over the transmission and distribution of electrical power to the areas affected by the McKinney Fire and has individual contracts with all residents and businesses in those areas to whom it distributes that electrical power. The communities affected by the McKinney Fire are all dependent upon the safe transmission and distribution of that electrical power for continuous residential and commercial usage, and Defendant has contractual, statutory, and public duties to provide that electrical power in a manner that promotes those individual and public interests.

72.    The potential harms to the Plaintiff's property from wildfires such as the McKinney Fire were objectively foreseeable both in nature and in scope and were subjectively known to Defendant from the history of wildfires caused by utility equipment.

/ / /

73.     Defendant's negligence, including Defendant's negligence per se, was a substantial factor in causing Plaintiff's damages.

74.     As a direct and proximate result of the aforesaid conduct, Plaintiff suffered damages described herein, which were proximately and substantially caused by the McKinney Fire.

75.     Public policy supports finding a duty of care in this circumstance due to Defendant's violation of California Civil Code §§ 3479, 3480, Public Utilities Code § 2106 and Health & Safety Code § 13007.

**C.  Count III - Trespass**

76.     Plaintiff incorporates and realleges by this reference each of the paragraphs set forth as though fully set forth herein.

77.     At all times relevant herein, Plaintiff was the owner, tenant, and/or lawful occupier of real property damaged by the McKinney Fire.

78.     Defendant in wrongfully acting and/or failing to act in the manner set forth above, caused the McKinney Fire to ignite and/or spread out of control, causing harm, damage, and/or injury to Plaintiff, resulting in a trespass upon Plaintiff's property interests.

79.     Plaintiff did not grant permission for Defendant to wrongfully act in a manner so as to cause the McKinney Fire, and thereby produce a fire which spread and wrongfully entered upon their property, resulting in harm, injury, and/or damage alleged herein.

80.     As a direct and legal result of the wrongful conduct of Defendant which led to the trespass, Plaintiff has suffered and will continue to suffer damages as set forth herein, in an amount according to proof at trial.

81.     Plaintiff suffered injuries and damages including but not limited the following: damage to and loss of natural resources, open space, parks, and public lands; property damages including  real and personal property damages, including loss of and damage to vegetation, trees, infrastructure, and structures; increased staff labor costs, including overtime labor costs to respond to and manage the McKinney Fire and ensure the safety of the citizens of Siskiyou County; fire suppression costs, including personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses; costs associated with debris removal; damage to infrastructure, including but not limited to roads,

sidewalks, water, stormwater and sewer systems, underground infrastructure and other public-entity owned infrastructure; damages based on fire-related soil erosion, loss of soil stability and productivity; damages related to water contamination including water quality preservation and correction expenses; loss of water storage; loss of aesthetic value; economic damages such as loss of tax revenue, including property, sales, and transient occupancy damages; losses from impacts on business-like activities; and other significant injuries, damages and losses directly related to and caused by the McKinney Fire. Plaintiff suffered other injuries and damages yet identified including those unique to the public entities.

82.     As a further direct and legal result of the wrongful acts and/or omissions of Defendant, Plaintiff seeks recovery of punitive and exemplary damages against Defendant as set forth above. Further, the conduct of Defendant and their failures to act as alleged in this Complaint were in reckless disregard of their consequences and in reckless disregard of the rights and safety of Plaintiff and subjected Plaintiff to cruel and unjust hardship, thus constituting malice and oppression on Defendant's part for which it must be punished by punitive and exemplary damages in an amount according to proof. An officer, director, or managing agent of Defendant personally committed, authorized, and/or ratified the reckless and wrongful conduct alleged in this Complaint.

**D. Count IV - Nuisance**

83.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained above as though the same were set forth herein in full.

84.      On July 29, 2022, Plaintiff was the owner, tenant, and/or lawful occupier of real property in the area of the McKinney Fire.

85.     Defendant's actions, conduct, omissions, negligence, trespass, and failure to act resulted in a fire hazard and a foreseeable obstruction to the free use of Plaintiff's property, invaded the right to use the Plaintiff's property, and interfered with the enjoyment of Plaintiff's property, causing Plaintiff to suffer unreasonable harm and substantial actual damages constituting a nuisance, pursuant to Civil Code §§ 3479, 3480, and 3481.

86.     Plaintiff did not consent, expressly or impliedly, to the wrongful conduct of Defendant in acting in the manner set forth above.

87.     As a further direct and legal result of the conduct of Defendant, Plaintiff has suffered, and will continue to be harmed by the interference with Plaintiff's occupancy, possession, use, and/or enjoyment of their property as alleged above.

88.     A reasonable, ordinary person would be reasonably annoyed or disturbed by the condition created by Defendant and the resulting fire.

89.     The conduct of Defendant was unreasonable and the seriousness of the harm to the public, including Plaintiff, outweighs the social utility of Defendant's conduct.

90.     As a direct and proximate result of the conduct of Defendant and the resultant fire, Plaintiff incurred significant and actual damages, as described herein and in an amount to be proven at trial.

91.     The hazardous conditions that were created by and/or permitted to exist by Defendant affected a substantial number of people within the general public, including Plaintiff, and constituted a public nuisance under Civil Code §§ 3479, 3480, and 3481 and Public Resources Code § 4171. Further, the ensuing uncontrolled wildfire constituted a public nuisance under Public Resources Code § 4170. Defendant's actions and inactions in creating these conditions were a substantial factor in causing Plaintiff to suffer damages unique to including, but not limited to, destruction of and damage to real and personal property, and other damages unique to public entities. Plaintiff seeks damages according to proof at trial.

92.     The conduct of Defendant set forth above constitutes a public nuisance within the meaning of Civil Code §§ 3479 and 3480, Public Resources Code §§ 4104 and 4170, and Code of Civil Procedure § 731.  Under Civil Code § 3493, Plaintiff has standing to maintain an action for public nuisance because the nuisance is especially injurious to Plaintiff because, as more specifically described above, it is injurious and/or offensive to the senses of Plaintiff, unreasonably interferes with the comfortable enjoyment of its properties, and/or unlawfully obstructs the free use, in the customary manner, of Plaintiff's properties, and has suffered harm, injury, and damages.

93.     Plaintiff suffered injuries and damages including but not limited to the following: damage to and loss of natural resources, open space, parks, and public lands; property damages including  real and personal property damages, including loss of and damage to vegetation, trees, infrastructure, and structures; increased staff labor costs, including overtime labor costs to respond to and manage the

McKinney Fire and ensure the safety of the citizens of Siskiyou County; fire suppression costs, including personnel, overtime labor costs, materials, and other fire suppression damages; evacuation expenses; costs associated with debris removal; damage to infrastructure, including but not limited to roads, sidewalks, water, stormwater and sewer systems, underground infrastructure and other public-entity owned infrastructure; damages based on fire-related soil erosion, loss of soil stability and productivity; damages related to water contamination including water quality preservation and correction expenses; loss of water storage; loss of aesthetic value; economic damages such as loss of tax revenue, including property, sales, and transient occupancy damages; losses from impacts on business-like activities; and other significant injuries, damages and losses directly related to and caused by the McKinney Fire. Plaintiff suffered other injuries and damages yet identified including those unique to public entities.

94.     Further, the conduct alleged against Defendant in this Complaint was despicable and subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights, constituting oppression, for which Defendant must be punished by punitive and exemplary damages in an amount according to proof.  Defendant's conduct was carried on with a willful and conscious disregard of the rights and safety of Plaintiff, constituting malice, for which Defendant must be punished by punitive and exemplary damages according to proof.  An officer, director, or managing agent of Defendant personally committed, authorized, and/or ratified the despicable and wrongful conduct alleged in this Complaint.

**E. COUNT V - Premises Liability**

95.     Plaintiff incorporates and re-alleges by this reference, each of the paragraphs set forth as though fully set forth herein.

96.     Defendant was the owner of an easement and/or real property in the area of the origins of the McKinney Fire and/or were the owners of the power lines upon said easement(s) and/or right(s) of way.

97.     Defendant acted wantonly, unlawfully, carelessly, recklessly, and/or negligently in failing to properly inspect, manage, maintain, and/or control the vegetation near its power lines along the real property and easement(s), allowing an unsafe condition presenting a foreseeable risk of fire danger to exist on said property.

/ / /

98.     As a direct and legal result of the wrongful acts and/or omissions of Defendant, Plaintiff suffered, and continues to suffer, the injuries and damages as set forth herein.

99.     As a further direct and legal result of the wrongful acts and/or omissions of Defendant, Plaintiff seeks the recovery of punitive and exemplary damages against Defendant as set forth above.

**F. COUNT VI - Private Action Under Public Utilities Code §2106**

100.     Plaintiff incorporates and realleges each of the paragraphs set forth above as though fully set forth herein.

101.     PACIFICORP was on July 29, 2022, and is, a "public utility" for purposes of the Public Utilities Code. PACIFICORP was, therefore, required to comply with the Public Utilities Act.

102.     As a public utility, Defendant is legally required to comply with the rules and orders promulgated by the California Public Utilities Commission pursuant to California Public Utilities Code § 702.

103.     A Utility that performs or fails to perform something required to be done by the California Constitution, a law of the State, or a regulation or order of the Public Utilities Commission, which leads to the loss or injury, is liable for that loss or injury, pursuant to Public Utilities Code §2106.

104.     As a utility, Defendant is required to provide, maintain, and service equipment and facilities in a manner adequate to maintain the safety, health, and convenience of their customers and the public, pursuant to Public Utilities Code §451.

105.     Defendant is required to design, engineer, construct, operate and maintain electrical supply lines in a manner consonant with their use, taking into consideration local conditions and other circumstances, so as to provide safe and adequate electric service, pursuant to Public Utility Commission General Order 95, Rule 33.1, and General Order 165.

106.     Through their omissions, commissions, and conduct alleged herein, Defendant violated Public Utilities Code sections 702 and 451, and/or Public Utilities Commission General Order 95, thereby making them liable for losses, damages and injury sustained by Plaintiff pursuant to Public Utilities Code § 2106.

107.     Public Utilities Code § 2106 creates a private right of action against "[a]ny public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or

which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission . . . ."

108.   As a Public Utility, Defendant at all times herein had a duty to properly design, construct, operate, maintain, inspect, and manage its electrical infrastructure as well as trim trees and vegetation in compliance with all relevant provisions of applicable orders, decisions, directions, rules or statutes, including, but not limited to, those stated in:  (a) General Order No. 95, Rules 31.1-31.5, 35, 38; (b) General Order No. 165; (c) Public Resources Code §§ 4292, 4293, and 4435; and (e) Public Utilities Code § 451.

109.   Defendant failed to comply with the requirements for overhead line design, construction, and maintenance, the application of which will ensure adequate service and secure safety to persons engaged in the construction, maintenance, operation or use of overhead lines and to the public in general, as required by Public Utilities Commission General Order 95, including but not limited to Rules 31.2, 35, and 38.

110.   Defendant failed to comply with the requirements for electric distribution and transmission facilities regarding inspections in order to ensure safe and high-quality electrical service as required by Public Utilities Commission General Order 165.

111.   The violation of a legislative enactment or administrative regulation which defines a minimum standard of conduct is unreasonable per se.

112.   Defendant violated the above listed requirements by, but not limited to, the following:

  a. Failing to service, inspect or maintain electrical infrastructure, structures and vegetation affixed to and/or in close proximity to high voltage electrical lines;

  b. Failing to provide electrical supply systems of suitable design;

  c. Failing to construct and to maintain such systems for their intended use of safe transmission of electricity considering the known condition of the combination of the dry season and vegetation of the area, resulting in Plaintiff being susceptible to the ignition and spread of fire and the fire hazard and danger of electricity and electrical transmission and distribution;

  d. Failing to properly design, construct, operate, maintain, inspect and manage its

electrical supply systems and the surrounding arid vegetation resulting in said vegetation igniting and accelerating the spread of the McKinney Fire;

e.     Failing to properly safeguard against the ignition of fire during the course and scope of employee work on behalf of Defendant; and,

f.     Failing to comply with the enumerated legislative enactments and administrative regulations.

113.    Defendant proximately and substantially caused the destruction, damage, and injury to Plaintiff by their violations of applicable orders, decisions, directions, rules or statutes, including, but not limited to, those stated in: (a) General Order No. 95, Rules 31.1-31.5, 35, 38; (b) General Order No. 165; (c) Public Resources Code §§ 4292, 4293, and 4435; and (d) Public Utilities Code § 4511.

114.    Plaintiff was and is within the class of persons for whose protection applicable orders, decisions, directions, rules or statutes were adopted, including, but not limited to, those stated in: (a) General Order No. 95, Rules 31.1-31.5, 35, 38; (b) General Order No. 165; (c) Public Resources Code §§ 4292, 4293, and 4435; and (d) Public Utilities Code § 451.

115.    As alleged herein according to proof, Defendant is liable to Plaintiff for all loss, damages and injury caused by and resulting from Defendant's violation of applicable orders, decisions, directions, rules or statutes were adopted, including, but not limited to, those stated in:  (a) General Order No. 95, Rules 31.1-31.5, 35, 38; (b) General Order No. 165; (c) Public Resources Code §§ 4292, 4293, and 4435; and (d) Public Utilities Code § 451.

116.    As a further direct and legal result of the wrongful acts and/or omissions of Defendant, Plaintiff seeks the recovery of punitive and exemplary damages against Defendant as set forth above.

**G. COUNT VII - Violation of Health & Safety Code § 13007**

117.    Plaintiff incorporates and realleges each of the paragraphs set forth above as though fully set forth herein.

118.    By engaging in the acts and/or omissions alleged in this Complaint, Defendant willfully, negligently, carelessly, recklessly, and/or in violation of law, set fire to and/or allowed fire to be set to the property of another in violation of Health & Safety Code § 13007.

/ / /

119. As a direct and legal result of Defendant's violation of Health & Safety Code §13007, Plaintiff suffered recoverable damages to property and continues to suffer the injuries and damages described above.

120. As a further direct and legal result of the Defendant violating Health & Safety Code §13007, Plaintiff is entitled to reasonable attorney's fees under Code of Civil Procedure § 1021.9.

121. As a direct and legal result of the wrongful acts and/or omissions of Defendant, Plaintiff suffered, and continues to suffer, the injuries and damages as set forth herein, including damages under Health and Safety Code Sections 13009, 13009.1, and 13009.2.

122. As a further direct and legal result of the wrongful acts and/or omissions of Defendant Plaintiff seeks the recovery of punitive and exemplary damages against Defendant as set forth above.

123. Further, the conduct of Defendant and their failures to act as alleged in this Complaint were in reckless disregard of their consequences and in reckless disregard of the rights and safety of Plaintiff and subjected Plaintiff to cruel and unjust hardship, thus constituting malice and oppression on Defendant's part for which it must be punished by punitive and exemplary damages in an amount according to proof.   An officer, director, or managing agent of Defendant personally committed, authorized and/or ratified the reckless and wrongful conduct alleged in this Complaint.

## DEMAND FOR JURY TRIAL AND RELIEF

124. Plaintiff hereby demands a jury trial for all claims so triable.

## PRAYER FOR RELIEF

125. Plaintiff seeks the following damages in an amount according to proof at the time of trial:

**For Inverse Condemnation:**

(1) Repair, depreciation, and replacement of damaged, destroyed, or lost personal and real property;

(2) Loss of the use, benefit, goodwill, and enjoyment of Plaintiff's real and personal property;

(3) Loss of wages, earning capacity, business profits and any related displacement expenses;

(4) All costs of suit, including attorneys' fees, expert fees, and related costs;

(5)    Any and all relief, compensation, or measure of damages available to Plaintiff by law based on the injuries and damages suffered by Plaintiff;

(6)    Prejudgment interest according to proof; and,

(7)    For such other and further relief as the Court shall deem proper, all according to proof.

**For Negligence, Trespass, Nuisance, Premises Liability, Violation of Public Utilities Code §2106, and Violation of Health & Safety Code §13007:**

(1)    General and/or special damages for all damage to property according to proof;

(2)    Loss of the use, benefit, goodwill, and enjoyment of Plaintiff's real and personal property;

(3)    Loss of wages, earning capacity, goodwill, business profits or proceeds and any related displacement expenses;

(4)    Evacuation expenses and alternate living expenses;

(5)    Fire suppression costs and costs for rescue and/or emergency medical services as allowed under Health & Safety Code §13009 and 13009.1;

(6)    Damages and costs for restoration and rehabilitation of land and ecological and/or environmental damages allowable under Health & Safety Code §13009.2;

(7)    Erosion damage to real property and flood control costs;

(8)    Attorneys' fees, expert fees, consultant fees and litigation costs and expenses, as allowed under Code of Civil Procedure section 1021.9 or any other statute;

(9)    Damages for wrongful injuries to timber, trees, or underwood on its property, as allowed under California law;

(10)   For punitive and exemplary damages against Defendant in an amount according to proof under Public Utilities Code § 2106 and/or any and all other statutory or legal bases that may apply;

(11)   Costs of suit;

(12)   Prejudgment interest; and,

(13)   For such other and further relief as the Court shall deem proper, all according to proof.

Dated:  December 21, 2022                    Respectfully submitted,


By: /s/ John P. Fiske
**BARON & BUDD, P.C.**
John P. Fiske (SBN 249256)
Jason Julius (SBN 249036)
Victoria Sherlin (SBN 312337)
Taylor O'Neal (SBN 336077)
11440 West Bernardo Court Suite 265,
San Diego, CA 92127
Telephone:  858-251-7424 Fax: 214-520-1181
Email: jfiske@baronbudd.com
        jjulius@baronbudd.com
        tsherlin@baronbudd.com
        toneal@baronbudd.com



**DIXON DIAB & CHAMBERS LLP**
Ed Diab (SBN 262319)
Deborah Dixon (SBN 248965)
Robert J. Chambers, II (SBN 244688)
600 W. Broadway, Suite 1540
San Diego, CA 92101
Tel: (619) 354-2662
Email: diab@theddcfirm.com
        ddixon@theddcfirm.com
        rob@theddcfirm.com

*Attorneys for Plaintiff Siskiyou County*